**ALASKA NATIONAL INSURANCE COMPANY, an Alaska corporation, Appellant,**

v.

**INDUSTRIAL INDEMNITY COMPANY, an Alaska corporation, Appellee.**

No. S–2273.

Supreme Court of Alaska.

July 22, 1988.

Rehearing Denied Sept. 1, 1988.

Charles Hagans and Sanford M. Gibbs, Hagans, Brown, Gibbs & Moran, Anchorage, for appellant.

Paul W. Waggoner, Paul W. Waggoner, Inc., Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

RABINOWITZ, Justice.

This case arises from a logging accident in which an employee of Northern Timber Company (Northern) was killed. Northern was a subcontractor of Schnabel Lumber Company (Schnabel), which had contracted with the State of Alaska to log state-owned land. Schnabel's contract with the state provided that Schnabel would indemnify the state "for any and all claims ... arising out of or connected with the exercise of the privileges granted [Schnabel] by this contract, except for injury, damages, or loss proximately caused by negligence of the State."

Schnabel was insured by Industrial Indemnity Company (Industrial) for $500,000. This policy named Northern as an additional insured. Northern's contract with Schnabel also included an indemnity clause. Northern agreed to indemnify Schnabel "against all claims ... caused in whole or in part by any negligent act or omission of [Northern]...." Northern was insured for $500,000 by Alaska National Insurance Company (Alaska National). The Alaska National policy included "contractual liability coverage," that is, coverage for liability Northern could incur as a result of a contract with Schnabel or another party.

On October 17, 1981, Bill Higdon, a Northern employee, was killed when a bridge collapsed at the Schnabel job site. Higdon's estate brought a wrongful death action against the state. Based upon the indemnity provision in its contract with Schnabel, the state filed third party complaints against Schnabel and Northern. The third party complaint against Northern was dismissed before trial because the state had misinterpreted Northern's contractual obligations to the state. Once Northern was dismissed from the action, Alaska National declined to participate in the defense.

The state settled the case for $500,000. The apportionment of liability issue went to a jury which determined that the state was 60% at fault for Higdon's death, Schnabel was 10% at fault, and, despite its dismissal from the action and consequent non-participation in the trial, Northern was 30% at fault. Industrial paid the state 40% of the settlement, plus costs and fees.

Industrial then filed suit against Alaska National "to pro rate ... the sums paid in satisfaction of the claim...." Industrial subsequently moved for summary judgment asserting that, as a matter of law, it was entitled to pro rata indemnity from Alaska National based upon the contractual liability endorsement in the policy Alaska National issued to Northern, and the indemnity contract between Northern and Schnabel. Industrial argued that Schnabel was an implied additional insured on the Alaska National policy.

Alaska National then moved for summary judgment on the ground that Industrial's complaint failed to state a claim on which relief could be granted. Alaska National argued that it was liable only for any sums that Northern had become legally obligated to pay, and that Northern was not legally obligated to pay anything since it had been dismissed as a third party defendant from the underlying wrongful death action.

The superior court granted Industrial's motion for summary judgment and denied Alaska National's motion. The court held that Alaska National had agreed to cover Northern's contractual liability; that Northern had signed an indemnity contract for Schnabel's benefit; that Industrial had incurred a loss, as Schnabel's insurer, within the class of losses Northern and Alaska National had agreed to indemnify; and, therefore, that Industrial was an implied-at-law beneficiary of the Alaska National policy.

Alaska National moved for reconsideration. The court denied its motion. Industrial then moved for summary judgment with respect to damages. It argued that the amount it had paid to the state, plus the cost of defending Schnabel, should be pro rated between the two insurance com-

panies based upon their policy limits. The superior court granted Industrial's motion and entered judgment against Alaska National.

We reverse.

DISCUSSION.

Alaska National argues that *Jefferson v. Sinclair Refining Co.*, 10 N.Y.2d 422, 223 N.Y.S.2d 863, 179 N.E.2d 706 (1961)[1] provides a clear analysis of a situation similar to the factual context of this case and urges us to adopt the *Sinclair* approach.

In *Sinclair* plaintiff's employer contracted with Sinclair to remove buildings from Sinclair's refinery. The employer agreed to indemnify Sinclair against liability for personal injuries arising out of work performed under the contract. Plaintiff sued Sinclair for injuries. Sinclair filed a third party complaint against the employer's insurer, alleging that it (Sinclair) was a beneficiary under the contractual liability endorsement in the policy issued to plaintiff's employer. *Id.* 223 N.Y.S.2d at 864–65, 179 N.E.2d at 707. In the endorsement the insurance company agreed "[t]o pay on behalf of the insured all sums which the insured, by reason of the liability assumed ... under any written contract ... shall become legally obligated to pay...." *Id.* The New York court held that the insured, plaintiff's employer, "ha[d] not yet become legally obligated to pay anything," *id.* 223 N.Y.S. at 865–66, 179 N.E.2d at 708, and that Sinclair's claim against the employer's insurer was therefore premature. *Id.* The court therefore upheld the dismissal of Sinclair's third party complaint against the employer's insurer. *Id.*

In the instant case the insurance coverage provided by Alaska National is stated in the following terms: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated

to pay as damages...." Coverage includes liability assumed under an "incidental contract." The contractual liability coverage endorsement provides: "The definition of incidental contract is extended to include any contract or agreement relating to the conduct of the named insured's business."

Thus it can be seen that the insurance policy in the case at bar is nearly identical to the one at issue in *Sinclair*. It does not flatly require Alaska National to indemnify Northern's contractual obligations.[2] The *Sinclair* court held that the plaintiff could not proceed directly against the insurer because the insured had not yet become legally obligated to pay damages. Likewise, Northern, Alaska National's insured, has not as yet become legally obligated to pay damages. As indicated earlier Northern was dismissed from the underlying wrongful death action prior to trial. Alaska National did not participate in the defense of the state's third party claim against Schnabel in the Higdon wrongful death action. Because Northern was not a party to the underlying action, no judgment has been entered against Northern establishing its liability for Higdon's death. Therefore, Northern is not at this point legally obligated to pay any sums as damages. Accordingly, Alaska National is not at this point required to indemnify Schnabel or Industrial under Northern's contract of indemnity with Schnabel.

We therefore hold that the superior court erred in granting summary judgment to Industrial. The grant of summary judgment is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

1. *See also CBF Trading Co. v. Hanover Ins. Co.,* 603 F.Supp. 685, 687 (S.D.N.Y.1984).

2. Northern's contractual obligation to indemnify differs from that which was involved in *Sinclair.* Northern is not liable for indemnity unless it was negligent, while the employer in *Sinclair* was liable even if it was not negligent. Since Northern's negligence has not been adju-

dicated in a case in which Northern has participated, its liability cannot be assumed, whereas the liability of the employer in *Sinclair* for defense costs was seemingly a certainty. Thus, from the appellant's standpoint, this case is stronger than *Sinclair* since timing was the only bar to the action in *Sinclair* while the important issue of Northern's negligence remains to be litigated here.